[No. F012908. Fifth Dist. Mar. 7, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY WILLIAM YOUNG, Defendant and Appellant.

**COUNSEL**

Arturo E. Ocampo, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Edgar A. Kerry and Garrick W. Chock, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

MARTIN, Acting P. J.—Appellant Anthony William Young was charged with felony burglary in violation of section 459 of the Penal Code.[1] A preliminary hearing was held on July 2, 1986, after which appellant pleaded guilty to the offense charged on the condition that the prosecutor recommend at sentencing that the court make an "unusual case" finding and grant probation with a condition of a six-month jail term. The case was certified to the superior court.

At sentencing, on August 5, 1986, the trial court, accepting the probation department's recommendations, granted appellant five years' probation with a condition that he be confined in the county adult detention facility for three hundred sixty days, was given appropriate time credits and charged a fine of $500.

On March 12, 1987, appellant was released from jail. He reported to the probation office in April of that year. He moved to San Joaquin County and, in June of 1987, the San Joaquin County Probation Office accepted courtesy probation supervision of appellant.

On May 4, 1989, a probation revocation hearing was held in appellant's absence in Stanislaus County from which the court found probable cause to believe appellant was in violation of probation. Probation was revoked and a warrant issued for his arrest. At the time, appellant was serving time in

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

state prison for another offense committed in San Joaquin County and a hold was placed on him for purposes of the probation revocation. He was brought to Stanislaus County after he finished his state prison sentence. He was arrested on the warrant on August 2, 1989. On August 4, 1989, appellant appeared before the Stanislaus County Superior Court and a public defender was appointed to represent him. On August 11, 1989, appellant admitted the alleged violations of probation. On August 16, 1989, appellant was sentenced to a midterm of four years for the violation of section 459. He was given 257 days of custodial credit and 128 days of section 4019 credit. Appellant filed a timely notice of appeal.

Appellant does not contest his conviction of violating section 459 by way of his guilty plea entered on July 2, 1986, or his admission of the violations of probation on August 11, 1989. Therefore, a statement of facts is not necessary.

DISCUSSION

## I.   NOTICE REQUIREMENTS OF SECTION 1203.2a

■   Section 1203.2a requires that notice be given to a probationer incarcerated for a subsequent offense so that he may seek prompt disposition of the earlier offense. A prisoner is entitled to reasonably prompt notice of the pending charges. (*People* v. *Cave* (1978) 81 Cal.App.3d 957, 963 [147 Cal.Rptr. 371].)

" 'The purpose of section 1203.2a is to prevent a defendant from inadvertently being denied the benefit of Penal Code section 669 that sentences be concurrent unless the court exercises its discretion to order that a subsequent sentence be consecutive to a prior sentence.' " (*People* v. *Johnson* (1987) 195 Cal.App.3d 510, 514, [240 Cal.Rptr. 748] quoting *In re White* (1969) 1 Cal.3d 207, 211 [81 Cal.Rptr. 780, 460 P.2d 980].) It has been held that where the prisoner is not promptly notified of the pending charges, and the state did not meet its burden of justifying the delay, the violation of the defendant's Sixth Amendment right to a speedy trial requires dismissal of the action. (*People* v. *Cave, supra*, 81 Cal.App.3d 957, 966; *People* v. *Vila* (1984) 162 Cal.App.3d 76, 87 [208 Cal.Rptr. 364].)

Appellant contends this case must be dismissed on the basis that the lower court had no authority to make any order on the probation revocation petition since the notice requirements of section 1203.2a were not met.

Respondent contends the issue is waived on several grounds but does not address the merits of the issue.

■ Initially, we review respondent's claim that appellant waived the issue for failure to raise the objection below. Respondent argues two prongs to the waiver issue. The first is that appellant failed to object on the basis of section 1203.2a, citing *People* v. *Gonzales* (1986) 188 Cal.App.3d 586, 590 [233 Cal.Rptr. 204], and, secondly, that " 'the "jurisdiction" referred to in Penal Code § 1203.2a, is jurisdiction over the person which can be conferred by acquiescence, silence, waiver or estoppel [citations].' (*People* v. *Davidson* (1972) 25 Cal.App.3d 79, 85 . . . .)" Thus, respondent claims the appellant failed to raise the objection and failed to challenge the court's jurisdiction over his person and therefore may not raise the issue for the first time on appeal. Respondent argues, in accordance with this theory, had appellant objected below, the prosecutor would have had the opportunity to rebut appellant's claim.

However, appellant counters in his reply brief that appellant did object below.

On August 4, 1989, at the hearing on the probation officer's supplemental report, appellant made the following statement:

"Your Honor, could I say something? I don't mean to interrupt. [¶] I've been in prison for the past year. CDC never told me I had a hold on me or anything, or I could have filed a 1381."

The court completely ignored this statement. Later the appellant asked if he could give the judge a piece of paper that had been handed to him. Upon receiving permission to do so, appellant stated:

"I contacted I guess the lady that handled that case right there that put the hold on me, Darleen Newlin. She said to come in here and tell you my situation and tell you you can call her to come in and ask you to run my time with the time I just served."

The Honorable Frank S. Pierson, Judge, responded by appointing the public defender to represent appellant and told him to show the piece of paper to the lawyer.

Again, on August 7, 1989, at a hearing on the probation officer's supplemental report before the judge, appellant again tried to raise the issue, stating:

"Okay. I've already been in prison. I've already been locked up, incarcerated for 14 months. I'm eager to get out. I was never aware of any kind—

see, my probation officer knew where I was the whole time. I was never aware—"

The court interrupted, stating:

"Those are matters, you see, that you should relate to your attorney, give him an opportunity—

"THE DEFENDANT: I've told him."

The matter was put over until August 9, 1989, when appellant again tried to raise the point, at which time the matter was again continued.

On August 16, 1989, the sentencing hearing was held and a deputy public defender appeared on behalf of appellant and Darleen Newlin, a deputy probation officer, was personally present. The matter came before Judge Azevedo.

The allegations of the probation violation having been admitted, reinstatement of probation was denied and the court ordered appellant be committed to state prison for the midterm of four years. He was given 257 days credit for time served and 128 good-time/work-time credits. The deputy public defender, on behalf of appellant, stated: "Mr. Young would also request the Court to make this sentence concurrent with the time that he has spent on the cases that are alleged in the petition." Appellant made the following statement:

"Your Honor, I never had a chance to file a 1381 in this matter, because I was only aware of the warrant 10 days before I was to parole. Not only that, but this warrant was, wasn't issued until a whole year later, until my time was up. The violation was in 1986, when these [sic] happened. I mean, violation was in 1988 when this happened, and then I was incarcerated all that time, without ever being aware that I had a warrant out for a probation violation. If I was aware of that, I could have filed a 1381 form."

Then the following exchange occurred:

"THE COURT: Not on a probation violation, not that I'm aware of.

"[Defense counsel]: Under some circumstances, he could perhaps have filed a 1381. The problem here was he was on a courtesy supervision from Stockton. When he was sentenced in, I believe, May or June of '88 on the cases that are alleged in the petition, the San Joaquin Probation Office terminated their courtesy supervision, but it's my understanding they did

not notify Stanislaus County Probation Department as to why they were terminating. They certainly did not indicate that there was any additional convictions, it's my understanding. And they did not find out about these convictions till sometime in mid-February of 1989.

"So, part of the problem was this transfer back from San Joaquin County to Stanislaus County. He was in custody at the time and that's why there were failures to appear at the probation department here in Stanislaus County. They had not been advised by probation in San Joaquin County that in fact, Mr. Young was in custody. And that's part of the reason why Mr. Young would like to have part of that time run concurrent with the Court's sentence today.

"THE COURT: I can understand his request. But the request is going to be denied. Let me point out to you that he was on probation when he committed the new violations. I'm not disposed to give him double credit under those conditions.

"So that request will be denied. The order will stand."

In light of all the attempts appellant personally made to raise the substantive grounds of this issue, we conclude that the issue was not waived even though the precise code section was not cited.[2]

■ Respondent also asserts that appellant also failed to satisfy the requirements of section 1237.5, which provides in part:

---

[2] Although appellant's attorney referred to section 1381, the substantive rights are basically the same as those conferred under section 1203.2a. Section 1381 provides in pertinent part:

"Whenever a defendant has been convicted, in any court of this state, of the commission of a felony or misdemeanor and has been sentenced to and has entered upon a term of imprisonment in a state prison . . . and has entered upon his or her term of commitment, and at the time of the entry upon the term of imprisonment or commitment there is pending, in any court of this state, any other indictment, information, complaint or any criminal proceeding wherein the defendant remains to be sentenced, the district attorney of the county in which the matters are pending shall bring the defendant to trial or for sentencing within 90 days after the person shall have delivered to said district attorney written notice of the place of his or her imprisonment or commitment and his or her desire to be brought to trial or for sentencing. . . . If a charge is filed against a person during the time the person is serving a sentence in any state prison . . . it is hereby made mandatory upon the district attorney of the county in which the charge is filed to bring it to trial within 90 days after the person shall have delivered to said district attorney written notice of the place of his or her imprisonment . . . and his or her desire to be brought to trial upon the charge . . . . In the event the action is not brought to trial within the 90 days the court in which the action is pending shall, on motion or suggestion of the district attorney, or of the defendant or person committed to the custody of the Director of Corrections . . . or his or her counsel, . . . or on its own motion, dismiss the charge. . . ."

"No appeal shall be taken by a defendant from a . . . revocation of probation following an admission of violation, except where the defendant has filed as part of the notice of appeal a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings. . . ."

Respondent contends that since appellant failed to comply with section 1237.5, the purported appeal based on the trial court's alleged failure to comply with section 1203.2a must be dismissed.

Appellant counters, relying on our case of *People* v. *Smith* (1985) 171 Cal.App.3d 997, 1001 [217 Cal.Rptr. 634], urging this court to treat his contention as a petition for writ of habeas corpus.

The purpose of section 1237.5 is to avoid frivolous or vexatious appeals. (*People* v. *Ribero* (1971) 4 Cal.3d 55, 63 [92 Cal.Rptr. 692, 480 P.2d 308].) In our view the issue raised here is significant. Furthermore, to fail to dispose of the issue on its merits might simply lead to further proceedings for ineffective assistance of counsel by way of habeas corpus. Therefore, to dismiss the appeal rather than exercising our power to reach the merits through a petition for writ of habeas corpus proceeding would, under these unusual circumstances, be "unnecessarily dilatory and circuitous." (*Olson* v. *Cory* (1983) 35 Cal.3d 390, 400-401 [197 Cal.Rptr. 843, 673 P.2d 720]; *People* v. *Chen* (1974) 37 Cal.App.3d 1046, 1048 [112 Cal.Rptr. 894].) Accordingly, this court has the power to treat the purported appeal as a petition for writ and we elect to do so.

Furthermore, we note that, pursuant to permission granted by this court, appellant filed an amended notice of appeal on July 12, 1990, setting forth that the grounds for appeal include the legality of the proceedings leading up to appellant's admission of being in violation of probation since he was not given prompt notification of the pending probation violation proceedings, thereby violating his Sixth Amendment right to a speedy trial.

■ As to respondent's contention that the issue of jurisdiction was waived, we note that in a criminal case the lack of jurisdiction may be raised as an issue for the first time on appeal. (*People* v. *Robertson* (1989) 48 Cal.3d 18, 42 [255 Cal.Rptr. 631, 767 P.2d 1109]; *People* v. *Morris* (1988) 46 Cal.3d 1, 13, fn. 4 [249 Cal.Rptr. 119, 756 P.2d 843]; *People* v. *Chadd* (1981) 28 Cal.3d 739, 756-757 [170 Cal.Rptr. 798, 621 P.2d 837].)

Section 1203.2a provides in pertinent part:

"If any defendant who has been released on probation is committed to a prison in this state . . . for another offense, the court which released him or

her on probation shall have jurisdiction to impose sentence, if no sentence has previously been imposed for the offense for which he or she was granted probation, in the absence of the defendant, on the request of the defendant made through his or her counsel, or by himself or herself in writing, if such writing is signed in the presence of the warden of the prison in which he or she is confined or the duly authorized representative of the warden, and the warden or his or her representative attests both that the defendant has made and signed such request and that he or she states that he or she wishes the court to impose sentence in the case in which he or she was released on probation, in his or her absence and without him or her being represented by counsel.

"The probation officer may, upon learning of the defendant's imprisonment, and must within 30 days after being notified in writing by the defendant or his or her counsel, or the warden or duly authorized representative of the prison in which the defendant is confined, report such commitment to the court which released him or her on probation.

". . . If sentence has not been previously imposed and if the defendant has requested the court through counsel or in writing in the manner herein provided to impose sentence in the case in which he or she was released on probation in his or her absence and without the presence of counsel to represent him or her, the court shall impose sentence and issue its commitment, or shall make other final order terminating its jurisdiction over the defendant in the case in which the order of probation was made. If the case is one in which sentence has previously been imposed, the court shall be deprived of jurisdiction over defendant if it does not issue its commitment or make other final order terminating its jurisdiction over defendant in the case within 60 days after being notified of the confinement. If the case is one in which sentence has not previously been imposed, the court is deprived of jurisdiction over defendant if it does not impose sentence and issue its commitment or make other final order terminating its jurisdiction over defendant in the case within 30 days after defendant has, in the manner prescribed by this section, requested imposition of sentence. . . ."

In the instant case, probation revocation proceedings commenced May 4, 1989. The record before us does not reveal the date the hold was placed on appellant while he was serving his prison term. However, he was placed in custody on August 2, 1989, in Stanislaus County when he completed his prison term arising out of the San Joaquin County offense. Appellant told the sentencing court here that he had been uninformed of the hold until 10 days before he was to parole. Appellant claims the state delayed approximately 79 days in notifying him of the pending probation revocation proceedings and was prejudiced by this delay since section 1203.2a allows only

30 days from the time the demand is made for the court to act. At the time of notification, appellant had only 10 days left on his prison term. Due to the delay in notifying appellant of the pending probation revocation proceedings, he was deprived of the opportunity to request that his sentence run concurrently. The apparent reason for the delay was that Mr. Young's whereabouts were unknown since San Joaquin County failed to inform Stanislaus County of the incarceration. San Joaquin County accepted courtesy supervision of appellant in June of 1987. He reported regularly to the San Joaquin County Probation Department until his incarceration, and San Joaquin County ultimately discontinued courtesy supervision on May 16, 1988. The record does not reveal when San Joaquin County advised Stanislaus County it no longer was providing courtesy supervision. Appellant was apparently unaware that San Joaquin County discontinued supervision as he continued to report to that county's probation officer while he was in prison. The record contains no justification by the state for the delay in providing notice to appellant of the pending probation revocation proceedings. The purpose of section 1203.2a is to prevent inadvertent consecutive sentences which would deprive defendant of the benefit of section 669, providing that sentences shall be concurrent unless the court expressly orders otherwise. (*In re White, supra,* 1 Cal.3d 207, 212; *People v. Davidson* (1972) 25 Cal.App.3d 79, 85 [101 Cal.Rptr. 494].)

■ Upon this record, we are satisfied that the trial court should have held an evidentiary hearing on the issue of lack of notice precluding appellant's assertion of his right to a speedy trial, the question of justification for the delay and the alleged justification, if any, balanced against the prejudice suffered by appellant due to the delay. (*People v. Vila, supra,* 162 Cal.App.3d 76, 84-88.) The prosecuting authorities failed to fulfill their duty to promptly notify appellant of the charges leading to revocation of probation and to inform him of his right to demand trial under the relevant statutory provision. (See *In re Mugica* (1968) 69 Cal.2d 516, 523-524 [72 Cal.Rptr. 645, 446 P.2d 525].)

"The constitutional right to a speedy trial protects every accused; a convict is not excepted." (*In re Mugica, supra,* 69 Cal.2d at pp. 522-523.) In *Mugica, supra,* in discussing section 1381, our Supreme Court pointed out that where a statute on the speedy trial right of an incarcerated defendant is silent on the duty to notify the prisoner, "the constitutional rights . . . to a speedy trial require that notice be given that a charge has been made against the prisoner within a reasonable time thereafter so that if he wishes to do so he may avail himself of the remedy provided therein." (*Id.* at pp. 523-524.)

The issue, therefore, is the appropriate remedy to which appellant is entitled. In *People v. Vila, supra,* 162 Cal.App.3d 76, 84, the Court of

Appeal concluded that the indictment in that case was properly dismissed for violation of the defendant's federal right to a speedy trial. "The Sixth Amendment right to a speedy trial is a fundamental due process right which applies in state prosecutions (*Klopfer* v. *North Carolina* (1967) 386 U.S. 213, 222-226 . . .), and the remedy for its violation is dismissal (*Strunk* v. *United States* (1973) 412 U.S. 434, 439-440 . . .)." (*People* v. *Vila, supra,* 162 Cal.App.3d 76, 84.)

In *Barker* v. *Wingo* (1972) 407 U.S. 514 [33 L.Ed.2d 101, 92 S.Ct. 2182], the United States Supreme Court identified four factors—length of delay, reason for delay, defendant's assertion of his right, and prejudice to the defendant—as "some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right." (*Id.* at p. 530 [33 L.Ed.2d at p. 117].) These related factors are to be considered together with such other circumstances as may be relevant. (*Id.* at p. 533 [33 L.Ed.2d at pp. 118-119].) In the instant case, remand is necessary for the trial court to conduct an evidentiary hearing and determine whether appellant's right to a speedy trial has been violated. (§ 1203.2a.)

## II. Commitment Proceedings Pursuant to Welfare and Institutions Code Section 3051

Appellant contends the lower court erred in failing to consider him for civil commitment under Welfare and Institutions Code section 3051 which provides in pertinent part:

"Upon . . . revocation of probation previously granted, and upon imposition of sentence, if it appears to the judge that the defendant may be addicted or by reason of repeated use of narcotics may be in imminent danger of becoming addicted to narcotics the judge shall suspend the execution of the sentence and order the district attorney to file a petition for commitment . . . to the Director of Corrections for confinement in the narcotic detention, treatment, and rehabilitation facility . . . ."

In the instant case appellant made no request for civil commitment under said section. However, case law has established that the appellant may raise this issue for the first time on appeal. (*People* v. *Sanford* (1988) 204 Cal.App.3d 1181, 1183 [251 Cal.Rptr. 707].)

As the record reflects, appellant was initially sentenced on August 5, 1986, at which time the trial court, accepting the probation department's recommendation, granted appellant probation upon the condition, among others, that he serve 360 days local time less appropriate custody credits. On March 12, 1987, he was released from jail. Appellant next appears in

this proceeding on a revocation of probation hearing on May 4, 1989. In the interim period, appellant had been prosecuted in San Joaquin County for petty theft with a prior and violation of Health and Safety Code section 11550, being under the influence of cocaine, a misdemeanor. For the felony petty theft with a prior, appellant was sentenced to state prison for the 18-month mitigated term. At the time of his revocation hearing in May 1989, appellant apparently had just completed this state prison sentence and was returned directly to Stanislaus County pursuant to its violation of probation hold. These facts were reflected in the supplemental probation report before the trial court at the sentencing hearing after appellant's probation revocation. At this hearing, the trial court failed to express on the record any awareness or consideration of appellant's substance abuse history or to consider his possible eligibility for civil commitment. We first review pertinent case law and then consider the facts in the instant case to resolve this issue.

In *People* v. *Flower* (1976) 62 Cal.App.3d 904 [133 Cal.Rptr. 455], the Second District Court of Appeal concluded that appellant had the burden of proving that the trial court failed to exercise its discretion in accordance with section 3051 of the Welfare and Institutions Code. On a silent record regarding appellant's history of substance abuse, the appellate court refused to remand the case although the possibility was clearly reflected in the record that appellant might be addicted to narcotics. (*Id.* at p. 909.) The *Flower* court held that where a sentencing court creates no record as to findings under Welfare and Institutions Code section 3051, it is presumed the court's official duty has been regularly performed (Evid. Code, § 664), and thus "appellant bears the burden of proving that the trial court did not exercise the discretion commanded by section 3051." (*Id.* at p. 910.) In *People* v. *Sanford, supra,* 204 Cal.App.3d 1181, the First District, Division Four, distinguished *Flower* on the basis that in *Sanford* the lower court *found* that Sanford *was addicted* to or in danger of becoming addicted to the use of cocaine pursuant to Welfare and Institutions Code section 3051, but failed to take any action or to make any finding regarding addiction or the danger of addiction. The *Sanford* court restricted the holding of *Flower* to cases where the trial court had made no findings about the danger of addiction. The court held that when a sentencing court finds that a defendant is an addict or is in imminent danger of becoming addicted, the court must institute civil proceedings. "On a silent record, we cannot find that the court discharged its duty to initiate these proceedings when the court found the defendant to be addicted or in imminent danger of becoming addicted." (*Sanford, supra,* 204 Cal.App.3d at p. 1184.)

In *People* v. *Brandon* (1989) 206 Cal.App.3d 1565 [254 Cal.Rptr. 504], the Third District Court of Appeal held that where a defendant made no

request for California Rehabilitation Center commitment, absent a contrary showing in the record, it is presumed the court properly exercised its discretion to conclude the defendant was ineligible, citing *Flower*. (*Id*. at p. 1569.)

In *People* v. *Pineda* (1965) 238 Cal.App.2d 466, 473 [47 Cal.Rptr. 879], the First District Court of Appeal remanded a case for resentencing, noting that there was no record of any consideration of civil commitment proceeding. The *Pineda* court examined the legislative intent that in general "addicts shall be treated for their condition and its underlying causes." (*Id*. at p. 472.) The appellate court noted the Supreme Court has stated that the discretion vested in the sentencing court should be exercised with a view to implementing the strong legislative policy disclosed by the enactments creating and governing the narcotic addict rehabilitation program. That policy favors inquiry into the addictive status of all criminal defendants whose records indicate the presence of an addiction problem, citing *People* v. *Ortiz* (1964) 61 Cal.2d 249, 254-255 [37 Cal.Rptr. 891, 391 P.2d 163]. In *Ortiz*, the judge expressed his regret that he could not under the circumstances make use of the provisions of sentencing the defendant to civil commitment proceedings and upon appeal it was held that mistake of the trial court required a remand. (*Id*. at pp. 254-255.)

With the above cases in mind, we review the facts in the instant case. Appellant's initial probation report in 1986 reflects that he had a history of alcohol abuse from age 16 and had experimented with marijuana, LSD and heroin. Alcohol and marijuana, of course, do not qualify as a narcotic under Welfare and Institutions Code section 3051. At the time he committed the underlying crime here, the residential burglary on February 2, 1986, appellant stated he was "wired up on crank" and the crime would not have happened but for that fact. However, at his probation interview on July 10, 1986, over five months later, appellant stated he had not used drugs since June and drugs were not a problem in his life. As also previously noted, appellant was granted probation with local time at that sentencing hearing pursuant to a negotiated plea.

At the sentencing hearing after his probation was revoked, on May 12, 1989, almost three years later, this history plus the fact appellant had been under the influence of cocaine at the time of his arrest in San Joaquin County, about a year previously, and that appellant had since been in state prison, were before the sentencing court, and appellant and his defense counsel each made remarks to the trial judge and discussed sentencing choices and related matters in substantial detail. However, no mention was made of any current or past substance abuse problems of appellant or the possibility of or need for any evaluation of appellant regarding a possible Welfare and Institutions Code section 3051 commitment.

In our view, considering this record in its entirety and the relevant events in sequence, including time lapses between these events, this record was not sufficient to put the trial court on notice, as a matter of law, at the sentencing hearing on revocation of probation that appellant may be addicted or may be in imminent danger of becoming addicted to narcotics.

Appellant urges us to look to *People* v. *Bruhn* (1989) 210 Cal.App.3d 1195 [259 Cal.Rptr. 6], a First District Court of Appeal case, which was remanded for resentencing since the trial court erred in summarily sentencing the defendant to state prison without indicating that federal commitment under section 1170.9 (consideration of federal correctional commitment for defendant convicted of felony who served in Vietnam) had been considered. (*Id.* at p. 1199.) In *Bruhn*, appellant pleaded guilty to petty theft with a prior, a felony (§§ 666, 488), after the preliminary hearing. The probation report noted that appellant served combat duty in Vietnam and had previously been involved in substance abuse. The court received letters from appellant and a longtime friend reciting the psychological effects which his Vietnam combat experience caused. Also included in the material was a letter from United States Veterans' Service Officer Fred Hetzler stating that appellant "might be suffering from what is now recognized as common to many Vietnam veterans and is termed post traumatic stress disorder." The letter went on to state that the Veterans' Administration has a treatment center in Menlo Park for veterans suffering from this syndrome and that application had been made on appellant's behalf to enter this program.

Defense counsel filed a statement in mitigation which asserted that appellant's crime was substantially a product of his difficult readjustment to civilian life following his return from Vietnam, and noted that appellant had recently begun to seek out treatment for his problems from the Veterans' Administration.

The trial judge stated that he had read all of the materials submitted to him and, without further comment, sentenced appellant to state prison for the midterm of two years plus an additional year under section 667.5. In addition, at the sentencing hearing the prosecutor specifically mentioned section 1170.9 and remarked in a previous case investigation revealed there had been no federal program available to receive the appellant. The appellate court noted if the trial court dismissed section 1170.9 as an option for appellant on the basis of this remark, it erred. (*People* v. *Bruhn, supra*, 210 Cal.App.3d 1195, 1200.)

Upon that record, the appellate court rejected the Attorney General's argument that ". . . we should presume, in the absence of an indication to

the contrary, that the trial court considered and rejected section 1170.9 as an alternative." (*People* v. *Bruhn, supra*, 210 Cal.App.3d at p. 1199.) The court further stated:

"In order to trigger the provisions of section 1170.9, the defendant must make an initial showing that he served in combat while a member of the United States Armed Forces and that he suffers from substance abuse or other psychological problems resulting from that service. Once that occurs, however, the trial court *must* then consider his suitability for federal incarceration for the term imposed. (*People* v. *Enriquez* (1984) 159 Cal.App.3d 1, 6 . . . .)" (*Ibid.*) The *Bruhn* court concluded that from this record the trial court was put on notice that it must consider section 1170.9 as an alternative sentencing scheme for appellant. Thus, to summarily sentence appellant to state prison without indicating that federal commitment under the statute had been considered required remand for resentencing.

In our view, *Bruhn* is clearly distinguishable on its facts from the instant case.

Finally, assuming arguendo the lower court was required to consider the applicability of Welfare and Institutions Code section 3051, we adopt the rationale of *People* v. *Flower, supra*, and *People* v. *Brandon, supra*, i.e., we will presume the trial court properly exercised its discretion to conclude the appellant was ineligible and that its "official duty has been regularly performed" pursuant to Evidence Code section 664.

### DISPOSITION

Therefore, in view of the fact that appellant may have completed his present sentence by the time this opinion becomes final, and in accordance with our conclusions in part I of this opinion, this case is remanded to the trial court to conduct an evidentiary hearing and determine whether or not appellant's right to a speedy trial has been violated, if within 30 days from the date this opinion becomes final, appellant makes a written request for a hearing. If no written request for hearing is made within that time, the trial court is directed to reimpose the original sentence. In all other respects, the judgment is affirmed.

Dibiaso, J., and Thaxter, J., concurred.